AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Western District of Virginia

| | |
|---|---|
| United States of America<br>v.<br><br>Ricky Donnell Abner<br><br>*Defendant(s)* | )<br>)<br>)  Case No.  6:21-MJ-00006<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __2019 to January 2021__ in the county of __Lynchburg__ in the __Western__ District of __Virginia__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 846 and 841(b)(1)(B) | Conspiracy to Distribute 500 Grams or More of Cocaine, a Schedule II Controlled Substance |

This criminal complaint is based on these facts:
Please see attached Affidavit.

☑ Continued on the attached sheet.

*s/Daniel Bailey*
*Complainant's signature*

Daniel Bailey, DEA Task Force Officer
*Printed name and title*

Received by reliable electronic means and sworn and attested to by telephone.

Date: 01/26/2021

*Robert S. Ballou*
*Judge's signature*

City and state: Roanoke, Virginia

Robert S. Ballou, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RICKY DONNELL ABNER | Case No.   6:21-cr-00006 |

**AFFIDAVIT IN SUPPORT OF
CRIMINAL COMPLAINT AND ARREST WARRANT**

I, Daniel Bailey, being first duly sworn, do hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.  I am a Task Force Officer with the Drug Enforcement Administration (DEA) and have been since 2017. I am also a Detective with the Lynchburg Police Department (Virginia) and be been so employed since 2002. I am currently assigned to investigate drug trafficking organizations as a member of the DEA, Washington Field Division/Roanoke Resident Office. My duties as a Task Force Officer involve the investigation of various criminal activities of narcotics traffickers and their associates. In investigating these matters, I have acted as a case agent, an undercover agent, and a contact agent for confidential sources. These investigations have resulted in the issuance of federal search warrants, seizure warrants, indictments, and convictions of persons for federal narcotics violations. During my employment as a law enforcement officer, I have received multiple hours of training in narcotics enforcement and investigative techniques, and I have personally participated in numerous investigations. I have also spoken on numerous occasions with informants, suspects, and other experienced narcotics traffickers concerning the methods and practices of drug traffickers, including the methods and practices used by traffickers of methamphetamine, heroin, and cocaine. I have been involved in

1

the execution of numerous search warrants on electronic devices, including cellphones, and in obtaining location information for those devices.

2. The facts in this affidavit come from my training and experience as well as information obtained from other law enforcement officers and interviews with witnesses. All observations I did not personally make were relayed to me by the individuals who made them, or come from my review of records, documents, and other physical evidence obtained during the course of this investigation. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

3. This affidavit is submitted in support of a criminal complaint and an arrest warrant charging **Ricky Donnell Abner** with conspiracy to distribute controlled substances involving at least 500 grams of a mixture of substance containing cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B).

## PROBABLE CAUSE

4. The United States, including Drug Enforcement Administration ("DEA"), Bureau of Alcohol, Tobacco, Firearms, and Explosive ("ATF"), and the Lynchburg Police Department ("LPD"), is conducting a criminal investigation of Jermel Storey ("STOREY"), Ricky Donnell Abner ("ABNER") and others regarding violations of distribution and possession with intent to distribute cocaine and other controlled substances, in violation of 21 U.S.C. § 841(a)(1), and conspiracy to distribute cocaine and other controlled substances, in violation of 21 U.S.C. § 846, in the Western District of Virginia and elsewhere.

**STOREY's Distribution of Narcotics**

5.      Multiple sources of information indicate that, prior to approximately 2013, STOREY lived in the Lynchburg, Virginia area and was a distributor of controlled substances. STOREY then relocated to Charlotte, North Carolina, located within the Western District of North Carolina, but continued to supply narcotics distributors in the Lynchburg, Virginia area, located within the Western District of Virginia.

6.      Since at least 2016, STOREY supplied multiple individuals in Lynchburg, Virginia with kilogram quantities of cocaine hydrochloride. STOREY travelled from Charlotte, North Carolina to Lynchburg, Virginia to deliver narcotics to distributors and to collect payment. STOREY also directed couriers to perform these trips and invited distributors to travel to Charlotte, North Carolina to obtain narcotics.

7.      In December 2018, the LPD executed a Virginia-issued search warrant on a cellular phone belonging to Co-Conspirator #1 ("CC-1"). Upon analysis of the data extracted from that cellular phone, this applicant determined that CC-1 was communicating, via text messaging, with a phone number identified as being used by STOREY during that time. The phone number, used by STOREY, sent CC-1 photographs of brick shaped items wrapped in plastic wrap. This applicant, knows through his training and experience that those bricks were consistent with kilogram bricks of cocaine. This applicant also observed text messages exchanged between STOREY and CC-1 negotiating cocaine purchases. These communications occurred between October 19, 2018 and November 25, 2018.

8.      In January 2019, a law enforcement officer conducted an interview with Source of Information #1 ("SOI-1") who had been arrested for drug trafficking in New Haven, Connecticut. SOI-1 advised law enforcement that STOREY was SOI-1's source of supply for

kilogram quantities of cocaine. SOI-1 advised that SOI-1 would communicate with STOREY via cellular phone to arrange for deliveries of narcotics.

9. In July 2019, this applicant conducted an interview with Source of Information #2 ("SOI-2") who had been arrested in February of 2019 for distribution of cocaine hydrochloride in Lynchburg, Virginia, which is in the Western District of Virginia. SOI-2 stated that SOI-2 had purchased kilogram quantities of cocaine hydrochloride from STOREY since 2015. SOI-2 advised that SOI-2 would communicate with STOREY over a cellular device to arrange narcotic transactions and the delivery of controlled substances to Lynchburg, Virginia.

10. In September 2019, this applicant made contact with Co-Conspirator #2 ("CC-2") who stated that CC-2 had a previous relationship of purchasing cocaine from STOREY. This applicant directed CC-2 to conduct a recorded phone call with STOREY to purchase four ounces of cocaine hydrochloride. CC-2 made contact with STOREY. STOREY instructed CC-2 to travel to Charlotte, North Carolina to purchase the cocaine. CC-2 ultimately did not go through with the purchase.

11. In February 2020, Co-Conspirator #3 ("CC-3") was arrested in the Western District of Virginia for distribution of controlled substances. CC-3 later advised law enforcement that STOREY had been CC-3's source of supply for cocaine hydrochloride between 2016 through 2020. CC-3 advised that STOREY had supplied the CC-3 with approximately sixty-five kilograms of cocaine during that timeframe. CC-3 advised that he communicated with STOREY via cellular phone.  CC-3 advised that STOREY rotated to multiple "burner" phones, but that CC-3 did not have STOREY's primary or personal number. CC-3 last purchased cocaine hydrochloride from STOREY, was indirectly through Co-Conspirator #4 ("CC-4"), in approximately January 2020.

12. In October of 2020, CC-4 identified STOREY as a multi-ounce distributor of cocaine hydrochloride and multi-pound distributor of marijuana. CC-4 advised that CC-4 had received cocaine hydrochloride, cocaine base, and marijuana from STOREY intermittently since 2002. CC-4 advised that CC-4 would communicate with STOREY via a cellular phone to coordinate the purchase of cocaine hydrochloride from STOREY. CC-4 advised that CC-4 would travel from Lynchburg, Virginia to Charlotte, North Carolina for the purpose of meeting STOREY and purchasing cocaine. CC-4 further advised that STOREY would also deliver cocaine, personally and through couriers, to CC-4 in Lynchburg, Virginia (Western District of Virginia). CC-4 advised that in, approximately, January 2020, CC-4 was fronted a kilogram of cocaine hydrochloride in Charlotte, North Carolina. STOREY instructed CC-4 to take half of the kilogram and give to CC-3 in Lynchburg, Virginia. CC-4 advised that CC-4 did as STOREY instructed. CC-4 advised that CC-4 further knew STOREY to supply CC-1, Co-Conspirator 5 ("CC-5"), and Co-Conspirator 6 ("CC-6") with cocaine hydrochloride.

13. In October 2020, CC-5 identified STOREY as a source of supply for cocaine hydrochloride and marijuana. CC-5 advised that STOREY had been CC-5's source of supply for cocaine hydrochloride since approximately 2002 and a marijuana since approximately 2018. CC-5 advised that STOREY resided in and operated his drug trafficking organization from Charlotte, North Carolina.

14. In December 2019, the Lynchburg Police Department executed a Virginia-issued search warrant on Verizon Wireless for the stored communication content for a cellular phone number previously identified as being used by Co-Conspirator #6 ("CC-6"). Analysis of the data received from Verizon Wireless determined that CC-6 was in contact with a cellular phone number previously identified as being used by STOREY. The contact between those two

numbers included text message exchanges. Those text messages detailed a scheduled meeting between CC-6 and STOREY in Charlotte, North Carolina for the purpose of CC-6 acquiring "1 – and a 1/2" from STOREY. STOREY instructed CC-6 to meet at the Country Inn and Suites (Charlotte, North Carolina). CC-6 provided STOREY with the specific room number in which CC-6 was located.

15. Law enforcement also served a search warrant on Verizon Wireless for geo-location data for that same number being used by CC-6 during that same time (December 2019). The analysis of the geo-location data corroborated the fact that CC-6 travelled to Charlotte, North Carolina during the time of the aforementioned text message exchange.

16. Law enforcement later served an Administrative Subpoena on the Country Inn and Suites. Based on that data it was determined that Co-Conspirator #7 ("CC-7") had rented the room specified by CC-6, during the same timeframe of the December 2019 meeting between CC-6 and STOREY.

17. On February 14, 2020, CC-7 was arrested by the Lynchburg Police for narcotic violations. CC-7 provided law enforcement a post-*Miranda* statement regarding their criminal activity. CC-7 advised that they were close acquaintances of CC-6. CC-7 advised that they had personally driven CC-6 to Charlotte, North Carolina, on multiple occasions, to purchase "bricks" of cocaine hydrochloride from STOREY. CC-7 specifically mentioned driving CC-6 to the Country Inn and Suites, previously described in this affidavit, to meet with STOREY. CC-7 advised that CC-6 obtained quantity of cocaine hydrochloride from STOREY that appeared to be just short of a kilogram.

18. In December 2020, Co-Conspirator #8 ("CC-8") advised law enforcement that CC-8 purchased distributable amounts of cocaine hydrochloride from STOREY in 2018. CC-8

advised that CC-8 would purchase cocaine hydrochloride from STOREY in Charlotte, North Carolina and re-distribute that substance in the Western District of Virginia. CC-8 advised that STOREY would also provide CC-8 additional quantities of cocaine hydrochloride to provide other distributors in the Western District of Virginia.

19.     In October 2020, CC-5 made a controlled purchase of a distributable amount of cocaine hydrochloride from STOREY in Charlotte, North Carolina. On the day of the controlled purchase, CC-5 contacted STOREY via cell phone to arrange a meeting location for the controlled purchase. After the conclusion of the conversation, law enforcement observed STOREY leaving his residence. CC-5 used Drug Enforcement Administration Official Advanced Funds in the form of United States currency to purchase the cocaine hydrochloride.

20.     In November 2020, CC-5 made a controlled purchase of a distributable amount of cocaine hydrochloride from STOREY in Charlotte, North Carolina. On the day of the controlled purchase, CC-5 contacted STOREY via cellular phone to arrange a meeting location for the controlled purchase. CC-5 used Drug Enforcement Administration Official Advanced Funds in the form of United States currency to purchase the cocaine hydrochloride.

21.     On November 22, 2020, law enforcement was monitoring the geo-location data of a cellular phone number believed to be used by CC-6, authorized by federal warrant from the Western District of Virginia (6:20-MJ-33). During that analysis, law enforcement tracked CC-6's phone to the same parking lot where STOREY met CC-5 to conduct controlled purchases. During that same time, law enforcement monitored the geo-locations of STOREY's phone. During that analysis, law enforcement determined that STOREY left the area of TARGET ADDRESS #1 and travelled to the location where CC-6 was plotting. Law enforcement further discovered that STOREY and CC-6 were plotting in the same area at the same time. CC-6 was

ultimately followed and stopped in the Western District of Virginia by law enforcement. During the course of that traffic stop, CC-6 was arrested on outstanding state arrest warrants originating out of Lynchburg, Virginia. CC-7 was found to be the driver of the vehicle. A subsequent search of that vehicle yield approximately 1,000 grams of cocaine hydrochloride and two cellular phones.

22. Law enforcement later executed a federal search warrant obtained from the Western District of Virginia (6:20-MJ-34) on the two cellular phones seized from CC-6 and CC-7. Analysis of that data determined that CC-6 was communicating with STOREY's phone via phone call and text messages on the day of CC-6's arrest. STOREY texted CC-6 an address for CC-6 to meet STOREY. That address was the same address that STOREY provided CC-5 to meet for one of the aforementioned controlled purchases. That address was also in the direct vicinity where both STOREY and CC-6 were pinging.

### ABNER's Involvement in the Conspiracy

23. CC-5 identified ABNER as a known marijuana courier for STOREY. CC-5 advised that ABNER once delivered multiple pounds of marijuana to CC-5 in the Western District of Virginia at the direction of STOREY.

24. A previously indicated, in October 2020, CC-5 made a controlled purchase of a distributable amount of cocaine hydrochloride from STOREY in Charlotte, North Carolina. Law enforcement observed STOREY leaving his residence. STOREY was followed from his residence directly to 6000 Elm Cove Lane, Charlotte, North Carolina 28269. STOREY went into 6000 Elm Cove Lane, Charlotte, North Carolina 28269 and stayed for a short period of time. STOREY was then observed leaving 6000 Elm Cove Lane, Charlotte, North Carolina 28269 and followed to the location where the controlled purchase took place. Upon conclusion of that

controlled purchase, STOREY was followed back to 6000 Elm Cove Lane, Charlotte, North Carolina 28269.

25. On January 26, 2021, pursuant to a federal search warrant obtained in the Western District of North Carolina, law enforcement searched the residence at 6000 Elm Cove Lane, Charlotte, North Carolina 28269.

26. Law enforcement encountered ABNER inside the residence. Law enforcement searched the residence and found six firearms and a package that appeared to be a kilogram of cocaine. Law enforcement also found a Honda Pilot vehicle located on the premises. The Honda Pilot was searched and found to have a hidden compartment which contained an additional two packages of what appeared to be a total of two kilograms of cocaine.

27. ABNER was advised of his rights, pursuant to *Miranda*, and admitted to the following:

   a. ABNER met STOREY in 2019. STOREY fronted ABNER with a kilogram of cocaine. That kilogram was later stolen from ABNER.

   b. ABNER began storing narcotics on STOREY's behalf.

   c. The three packages found at ABNER's residence were cocaine and belonged to STOREY. STOREY owned the Honda Pilot and kept it at ABNER's residence.

## **CONCLUSION**

28. Based on the aforementioned, there is probable cause to believe that, starting at an unknown date but no later than 2019 and continuing through January 2021, in the Western District of Virginia and elsewhere, **Ricky Donnell Abner**, knowingly and intentionally combined, conspired, confederated, and agreed with other persons known and unknown to distribute and possess with intent to distribute controlled substances, to wit: 500 grams or more

of a mixture or substance containing a detectable amount of cocaine, its salts, optical and geometric isomers, and salts of isomers, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(b)(1)(B), all in violation of Title 21, United States Code, Sections 846.

## **OATH**

The information in this affidavit is true to the best of my knowledge and belief.

Respectfully submitted,

*s/Dan Bailey*
Daniel Bailey, Task Force Officer
Drug Enforcement Administration

Received by reliable electronic means and sworn and attested to by telephone on this 26th day of January 2021.

*Robert S. Ballou*
ROBERT S. BALLOU
UNITED STATES MAGISTRATE JUDGE