CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
9/16/2021
JULIA C. DUDLEY, CLERK
BY: s/ C. Amos
    DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RICKY DONNELL ABNER,<br><br>*Defendant.* | CASE NO. 6:21-cr-00001<br><br>MEMORANDUM OPINION & ORDER<br><br>JUDGE NORMAN K. MOON |

On January 26, 2021, DEA agents executed a search warrant at the residence of Defendant Ricky Donnell Abner in Charlotte, North Carolina. Dkt. 1 ¶ 25; Dkt. 133 at 1; Dkt. 174 at 1. Law enforcement discovered six firearms and what appeared to be a kilogram of cocaine; they also found a vehicle on the premises with a hidden compartment containing two more kilograms of cocaine. Dkt. 1 at 10. Law enforcement detained Abner in handcuffs during the search, and he admitted to storing drugs for Jermel Storey. *Id.* ¶ 27. After obtaining an arrest warrant via criminal complaint from the Western District of Virginia, law enforcement placed Abner under arrest. Dkt. 149 at 7.

Abner filed a motion to suppress his statements and the physical evidence resulting from the search. Dkt. 170. The Government opposes the motion. Dkt. 182. Abner argues that both his confession and all other evidence from the search should be suppressed because the search warrant was issued without probable cause, and a reasonable law enforcement officer could not rely on the warrant under the good faith exception established in *United States v. Leon*, 468 U.S. 897, 922–23 (1984). Dkt. 170 ¶¶ 6, 7, 16. The Government maintains that the affidavit in support of the search warrant for the home contained information establishing probable cause. Dkt. 182 at 2–12. The Government argues that even if the warrant was not supported by probable cause,

law enforcement reasonably relied on its issuance and the resulting evidence is therefore admissible under *Leon*'s good faith exception. *Id.* at 12–13.

Having considered the full record, including evidence provided at a suppression hearing, the Court concludes that Abner has not shown that the affidavit supporting the search warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Williams*, 548 F.3d 311, 317–18 (4th Cir. 2008) (quoting *Leon*, 468 U.S. at 923). Rather, the Court finds that the DEA agents' reliance on the search warrant was objectively reasonable. Accordingly, the Court will deny Abner's motion to suppress the evidence from the search, including his incriminating statements.

## I.  FACTUAL BACKGROUND

### A.  Application for the Warrant

On January 20, 2021, DEA Task Force Officer Daniel Bailey applied to the United States Court for the Western District of North Carolina for a warrant to search 6000 Elm Cove Lane ("Target Address #2") in Charlotte, North Carolina. Dkt. 174 at 2, 3, 34. Officer Bailey submitted a 32-page affidavit that supported the search warrant for 6000 Elm Cove Lane and two other sites. *Id.* at 3–34. The warrant sought "[b]ooks, records, receipts, notes, ledgers, and other papers relating to the transporting, ordering, purchasing, and distributing of controlled substances" in addition to "[c]ontrolled substances," "firearms," and other material. *Id.* at 36–37.

### B.  Supporting Affidavit

The affidavit alleges that dating back to approximately 2013, Storey and others possessed with intent to distribute, and distributed, cocaine and other controlled substances. *Id.* ¶¶ 9–19. It names Abner as a co-conspirator. *Id.* ¶ 7.

1. **6000 Elm Cove Lane**

The affidavit outlined law enforcement's reasons for believing that 6000 Elm Cove Lane was Abner's residence, including vehicles registered to him being parked on the property and the delivery of mail addressed to him. *Id.* ¶¶ 39, 40, 43, 48. Abner does not contest the allegation that he resided on the property. Officer Bailey stated that based on his training, expertise, and experience, "[d]istributors of controlled substances" often keep records of their enterprise in their residences and in stash houses. *Id.* ¶ 63(a), (c).

2. **Information from Co-Conspirators**

One co-conspirator ("CC-3") identified Abner as "a close associate" of Storey. *Id.* ¶ 46. Another co-conspirator ("CC-5") identified Abner as "a known marijuana courier" for Storey, who, at an unspecified point in time, had delivered multiple pounds of marijuana to CC-5 for Storey. *Id.* ¶ 19.

CC-5 identified Storey as a drug trafficker then based in Charlotte, North Carolina, and as CC-5's supplier "for cocaine since 2002 and marijuana since 2018." Dkt. 174 ¶ 19. CC-5's characterization of Storey as a drug trafficker was corroborated by other sources, including law enforcement surveillance. *Id.* ¶ 19. CC-5 also identified Cynthia Trigg as an associate of Storey, which law enforcement verified. *Id.* ¶¶ 19, 52. CC-5 identified Storey's address and recounted that CC-5 had spoken with Storey while Storey was in Arizona; law enforcement verified the address, and the Arizona trip was corroborated by subpoena of Storey and Abner's flight records. *Id.* ¶¶ 32, 41.

CC-5 recounted that while in Arizona, Storey told CC-5 that Storey "would be 'good' once [he] got back to Charlotte, North Carolina." *Id.* ¶ 41. The affidavit states that "[l]aw

enforcement knows 'good' to be a common term used to describe that distributors of illicit narcotics have product for sale." *Id.*

CC-5 made a controlled purchase of a distributable amount of cocaine from Storey in October 2020. *Id.* ¶ 33. Law enforcement observed Storey stop at 6000 Elm Cove Lane before going to the transaction location and return to the residence afterward. *Id.* In November 2020, Storey told CC-5 that his "man" had cocaine "for sale but it was not of the same quality as previously sold." *Id.* ¶ 44. CC-5 made another controlled purchase from Storey in November 2020. *Id.* ¶ 44.

### 3. Law Enforcement Observations

On the day that, according to CC-5, Storey relayed information about the availability and quality of drugs that could be acquired from his "man," law enforcement saw a vehicle Storey had used during prior controlled purchases parked at 6000 Elm Cove Lane. *Id.* Storey's phone was also "pinging" in the area at the time. *Id.*

Between November 12 and December 15, 2020, law enforcement surveillance of Storey's cell phone placed him in the vicinity of 6000 Elm Cove Lane "fifteen out of the thirty-three days of acquired data."[1] *Id.* ¶ 47.

According to the flight records acquired by subpoena, between January 2018 and November 2020, Abner shared seven flights with Storey to or from Charlotte, North Carolina, and either Phoenix, Arizona, or Houston, Texas. Officer Bailey stated in his affidavit that "[l]aw enforcement knows [Phoenix and Houston] to be source cities for illicit narcotics." *Id.* ¶ 41.

---

[1] The affidavit does not specify exactly how close the phone geo-location places Storey to the residence.

In July 2020, law enforcement observed Storey and Abner arrive in Charlotte, North Carolina on a flight from Houston, Texas. *Id.* ¶ 42. The affiant stated that, in his training and experience, "[i]t is common practice for large-scale drug traffickers to travel to their source and distribution points to facilitate their trafficking." *Id.* ¶ 63(e).

### C. Issuance and Performance of the Warrant

On January 20, 2021, Magistrate Judge David S. Cayer issued the search warrant for 6000 Elm Cove Lane. *Id.* at 2. Law enforcement executed the warrant on January 26, 2021, and they found six firearms and what appeared to be a kilogram of cocaine. Dkt. 1 ¶¶ 25, 26. They also found a vehicle on the premises with a hidden compartment containing what appeared to be two additional one-kilogram packages of cocaine. *Id.* ¶ 25.

Law enforcement encountered Abner inside the residence. *Id.* ¶ 26. At some point, he was advised of his rights under *Miranda*. *Id.* ¶ 27.

In response to law enforcement officers' questions, Abner admitted that he met Storey, and obtained a kilogram of cocaine from him, in 2019; that he "began storing narcotics on Storey's behalf" and that the three packages law enforcement had found on the premises "were cocaine and belonged to Storey," as did the vehicle that two of the packages were hidden in. Dkt. 1 ¶ 27. After obtaining an arrest warrant via criminal complaint from the Western District of Virginia, law enforcement placed Abner under arrest. Dkt. 149 at 7.

On February 24, 2021, a grand jury indicted Abner on two counts: conspiracy to distribute and possess with intent to distribute cocaine and marijuana, and possession of a firearm in furtherance of drug trafficking. Dkt. 71 at 1, 9.

## II.    ANALYSIS

Abner argues that his confession and all other evidence from the search should be suppressed based on a violation of his Fourth Amendment right to be free from unreasonable search because the affidavit supporting the search warrant did not establish probable cause. Dkts. 170, 183. Abner contends that the affidavit was "conclusory, stale and bare bones with respect to [him]," Dkt. 170 ¶ 16, failing to establish that Abner had *current* involvement with Storey's enterprise, and that the drug activity under investigation had a nexus with 6000 Elm Cove Lane. *Id.* ¶¶ 8–12.

He also argues that the affidavit relied unduly on CC-5's statements about Abner, without providing necessary indicia of CC-5's "veracity or reliability as a source." *Id.* ¶¶ 8, 10. Finally, Abner contends that the affidavit was so clearly deficient that law enforcement could not reasonably rely on the warrant that the magistrate judge issued. *Id.* ¶¶ 6, 7, 16.

The Government argues in opposition that the affidavit afforded probable cause for the search, and that even if the warrant failed to establish probable cause, the evidence should not be suppressed because law enforcement relied on the warrant in good faith. Dkt. 182 at 2–13.

### A.  The Probable Cause Requirement

A search warrant passes constitutional muster when it is issued by a neutral magistrate and supported by probable cause. *Illinois v. McArthur*, 531 U.S. 326, 330 (2001). That neutral magistrate is to make a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him," that "there is a fair probability that contraband or evidence of a crime will be found at a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). This "totality-of-the-circumstances approach" is based on "the veracity and basis of knowledge of persons supplying hearsay information." *United States v. Custis*, 150 F. App'x 265, 268 (4th Cir.

2005) (quoting *Gates*, 462 U.S. at 238) (internal quotation marks omitted). A reviewing court's duty is to ensure that the magistrate had a "substantial basis" for finding probable cause existed, *id.* at 238–39, affording the magistrate "great deference" in making that determination, *United States v. Jones*, 942 F.3d 634, 638 (4th Cir. 2019).

### 1. Staleness

To be sure, "there is no question that time is a crucial element of probable cause." *United States v. McCall*, 740 F.2d 1331, 1335 (4th Cir. 1984). A search warrant may only issue upon allegations of "facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." *Id.* at 1335–36 (quoting *Sgro v. United States*, 287 U.S. 206, 210 (1932)). Staleness becomes an issue either when (1) "the facts alleged in the warrant may have been sufficient to establish probable cause when the warrant was issued, but the government's delay in executing the warrant possibly tainted the search," or (2) "the warrant itself may be suspect because the information on which it rested was arguably too old to furnish 'present' probable cause." *Id.* at 1336 (citations omitted).

However, "[t]he vitality of probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit." *United States v. Farmer*, 370 F.3d 435, 439 (4th Cir. 2004) (citation omitted). Rather, a court "must look to all the facts and circumstances of the case, including the nature of the unlawful activity alleged, the length of the activity, and the nature of the property to be seized." *Id.* (citation omitted).

Abner contends that the evidence underlying the search warrant "fails to establish probable cause that to believe that agents would find controlled substances" or evidence of drug trafficking at his home on January 26, 2021. Dkt. 170 ¶ 9. He points out that the affidavit's only

7

statement about his delivering drugs—the marijuana delivery to CC-5—lacks any specificity in time. *Id.* ¶¶ B, 8, 9. The Government argues that the affidavit in support of the search warrant lays out "an extensive, multi-year drug trafficking conspiracy." Dkt. 182 at 5. The drug trafficking was "continuous" and dates back at least to 2013. *Id.*; Dkt. 174 ¶¶ 12–17, 19.

Indeed, Officer Bailey's affidavit states that between January 2018 and November 2020, Abner shared seven flights with Storey to or from Charlotte, North Carolina, and either Phoenix, Arizona, or Houston, Texas. Dkt. 174 ¶ 41. According to CC-5, Storey indicated that he acquired drugs on the Arizona trip in July 2020. *Id.* In addition, in October and November 2020, CC-5 conducted controlled purchases of cocaine from Storey. *Id.* ¶¶ 33–34.

In the warrant, law enforcement sought not only controlled substances but "evidence of drug distribution that is not ordinarily destroyed." Dkt. 182 at 4. The search warrant application included "[b]ooks, records, receipts, notes, ledgers, and other papers relating to the transporting, ordering, purchasing, and distributing of controlled substances." Dkt. 174 at 36. Accordingly, the Government contends that the search warrant was adequately supported because "[p]robable cause exists to search for evidence that is unlikely to diminish where there is evidence of continuous and protracted criminal activity." Dkt. 182 at 3.

Indeed, where an affidavit underlying a search warrant shows "criminal activities of a protracted and continuous nature," that "render[s] the recency of the information" in the affidavit "less crucial" in supporting probable cause. *Farmer*, 370 F.3d at 439 (quotations omitted). Evidence of a longstanding or widespread drug conspiracy supports a finding of probable cause, notwithstanding a gap in more recent information. *See, e.g.*, *United States v. Dowdell*, 546 F. App'x 128, 133 (4th Cir. 2013) (rejecting staleness argument where affidavit included calls between defendant and his co-conspirator regarding drug activity in October and November

2010, co-conspirator parked around the corner from defendant's residence—a suspected stash house—in February 2011, and officer executed search warrant on defendant's residence in March 2011); *United States v. Alvarez*, 358 F.3d 1194, 1204 (9th Cir. 2004) (finding search warrant issued December 1999 not stale based on evidence through May 1999, when other evidence showed "the case involved an extensive and longstanding drug conspiracy"); *United States v. Leasure*, 319 F.3d 1092, 1099 (9th Cir. 2003) (noting that when evidence supports "the existence of a widespread, firmly entrenched, and ongoing narcotics operation[,] . . . staleness arguments lose much of their force"); *United States v. Domme*, 753 F.2d 950, 953 (11th Cir. 1985) ("When criminal activity is protracted and continuous, it is more likely that the passage of time will not dissipate probable cause.").

In this case, the affidavit includes statements that identify Storey as a source for drugs over years, even as early as 2002. CC-5 conducted controlled purchases from Storey in October and November 2020, indicating that the drug trafficking continued some two to three months prior to the execution of the search warrant at 6000 Elm Cove Lane. Dkt. 174 ¶¶ 33–34. In addition, when CC-5 contacted Storey in November 2020 to order cocaine and Storey informed him that his "man" had cocaine for sale, law enforcement observed a vehicle Storey had used during the controlled purchases in October and November 2020 parked in front of Abner's residence. *Id.* ¶ 44. Given the ongoing nature of the drug trafficking up until a couple months before the search warrant was executed, the court finds that Abner's contention of staleness fails to undermine the magistrate judge's finding of probable cause.

### 2. Use of CC-5's Statements

"[P]robable cause may be founded upon hearsay and upon information received from informants." *Franks v. Delaware*, 438 U.S. 154, 165 (1978). Although "not independent

requirements," the "informant's veracity, reliability, and basis of knowledge are also relevant" to the totality-of-circumstances assessment that a judge performs when he or she receives an application for a warrant.[2] *United States v. Lalor,* 996 F.2d 1578, 1581 (4th Cir. 1993).

Additionally, "[a]n important factor in determining whether an informant's report establishes probable cause is the degree to which it is corroborated." *Id.* However, when an informant has a history of providing accurate information, "the informant's track record provides verification and corroboration that his future tips will likewise be reliable." *United States v. Gondres-Medrano*, 3 F.4th 708 (4th Cir. 2021). Giving credence to an informant whose prior statements stood up to independent corroboration "suffices for the practical, common-sense judgment called for in making a probable cause determination." *Gates*, 462 U.S. at 244.

Abner contends that the magistrate judge had insufficient information about CC-5's "veracity or reliability as a source" to reasonably conclude that the affidavit provided probable cause for the warrant. Dkt. 170 ¶ 10. The Government counters that CC-5 demonstrated reliability by providing multiple statements that were independently corroborated, by making a statement against CC-5's penal interest, and by completing controlled purchases. Dkt. 182 at 10–12.

The Court agrees with the Government. First, the Court finds the corroboration of CC-5's statements persuasive as indicia of CC-5's reliability. CC-5 identified Storey as a "source of supply for cocaine and marijuana," based in Charlotte; police surveillance and several controlled purchases in October and November 2020 confirmed this fact. Dkt. 174 ¶¶ 19, 33–34. CC-5 also identified Cynthia Trigg as an associate of Storey, which law enforcement verified. *Id.* CC-5

---

[2] CC-5's basis of knowledge is not contested in Abner's briefing.

identified Storey's address and recounted that CC-5 had spoken with Storey while Storey was in Arizona; law enforcement corroborated both the address and Arizona trip. *Id.* ¶¶ 32, 41.

Second, CC-5's statement against penal interest likewise shows CC-5's reliability. *See United States v. Redd*, 341 F. App'x 864, 867 (4th Cir. 2009) (noting "no motivation to lie" where an informant in a drug distribution case made statements against penal interest). CC-5 made a statement against CC-5's own penal interest by identifying Storey as CC-5's supplier "for cocaine since 2002 and marijuana since 2018." Dkt. 182 at 11; Dkt. 174 ¶ 19.

Finally, considering the totality of the circumstances, as did the magistrate judge when issuing the warrant, the Court agrees with the Government that CC-5's completion of controlled purchases supports reliability. *See United States v. Reed*, 788 F. App'x 903, 907 (4th Cir. 2019); *United States v. Redd*, 341 F. App'x 864, 867 (4th Cir. 2009). CC-5 conducted two controlled purchases of distributable amounts of cocaine from Storey. Dkt. 174 ¶¶ 33–34.

Additionally, the Court notes that while CC-5's statements are important to the affidavit, they are not the sole foundation for the implication that Abner had ties to Storey's drug trafficking enterprise. Law enforcement independently established Abner and Storey's repeated shared travel from American Airlines records of seven flights the two took together. *Id.* ¶ 41. And law enforcement observed Storey visiting Abner's residence at 6000 Elm Cove Lane before and after one of CC-5's controlled purchases in October 2020. *Id.* ¶¶ 33, 39. Tracking of Storey's phone placed him in frequent proximity to Abner. *Id.* ¶ 47.

In this case, given that law enforcement independently corroborated CC-5's statements, that CC-5 completed controlled purchases, and that CC-5 gave a statement against penal interest, the court finds that the magistrate judge could reasonably conclude that CC-5 provided reliable information.

### 3. Nexus with 6000 Elm Cove Lane

The Fourth Circuit has clearly stated that it has "upheld warrants to search suspects' residences and even temporary abodes on the basis of (1) evidence of the suspects' involvement in drug trafficking combined with (2) the reasonable suspicion (whether explicitly articulated by the applying officer or implicitly arrived at by the magistrate judge) that drug traffickers store drug-related evidence in their homes." *Williams*, 548 F.3d at 319 (citing cases). Indeed, the Fourth Circuit has "consistently determined that there was probable cause to support search warrants—and not merely sufficient indicia of probable cause to justify application of the *Leon* good faith exception—in similar circumstances." *Id.*

Abner does not take issue with law enforcement's conclusion that 6000 Elm Cove Lane was his residence. The affidavit included the statement, based on training, expertise, and experience, that "[d]istributors of controlled substances" often keep records of their enterprise in their residences. Dkt. 170 ¶ 63 (a). Given this explicit statement, there is no need for the magistrate judge to "implicitly arrive" at the conclusion that drug traffickers may store evidence of their enterprise in their homes, fulfilling the second *Williams* prong. The operative question is whether the affidavit provided information from which the magistrate judge could reasonably infer that Abner was part of the drug conspiracy.

Abner argues that the affidavit fails to establish that "Abner is presently involved in Storey's narcotics distribution enterprise," or to establish a nexus between the drug conspiracy and his residence that would provide probable cause to believe that the residence contained narcotics or evidence of narcotics trafficking. Dkt. 170 ¶¶ 7, 11–15. He points out that the affidavit includes no information about controlled purchases from Abner himself or controlled purchases that occurred at Abner's house, and he argues that the observed facts about his

association with Storey are consistent with a purely social relationship. *Id.* ¶¶ 11, 13. He also emphasizes that although the affidavit describes one instance of Storey visiting Abner's residence before and after a controlled purchase, that visit does not create a pattern of behavior that can support the inference that Storey used Abner's residence as a stash house. Dkt. 183 at 6. The Government, in contrast, argues that the affidavit "lays out defendant Abner's extended involvement with the conspiracy." Dkt. 182 at 5.

Abner characterizes the affidavit as "bare bones" and "conclusory." Dkt. 170 ¶ 16. The Fourth Circuit has described a "bare bones affidavit" as "not one with weak inferences, but rather one without facts from which a judge can determine probable cause," and in which an affiant "merely recites the conclusions of others—usually a confidential informant—without corroboration or independent investigation of the facts alleged." *United States v. Johnson*, 4 F. App'x 169, 172–73 (4th Cir. 2001)

The Court disagrees with Abner's characterization. The affidavit is anything but "bare bones" and "conclusory." As discussed above, law enforcement independently investigated and corroborated many of the facts CC-5 alleged. At least six co-conspirators, only one of whom was CC-5, identified Storey as a supplier of cocaine. Dkt. 174 ¶¶ 15–17, 19, 23–24. CC-5 then conducted controlled purchases from Storey in October and November 2020. Dkt. 174 ¶¶ 33–34. And CC-5 identified Abner as a marijuana courier for Storey. *Id.* ¶ 19.

The facts support a reasonable inference that Abner was involved in Storey's drug conspiracy and that evidence of that drug conspiracy would be found at Abner's residence. Although Abner asserts that his seven shared flights with Storey between January 2018 and November 2020 are consistent with a purely social relationship, the two traveled repeatedly to cities that law enforcement knows are sources for narcotics. *Id.* ¶¶ 41–42. In addition, in

conversations with law enforcement, CC-5 reported that Storey said he would be "good"—i.e., have narcotics for sale—after one trip to Arizona. *Id.* In addition, law enforcement observed Storey visiting Abner's residence at 6000 Elm Cove Lane before and after one of CC-5's controlled purchases in October 2020. *Id.* ¶¶ 33, 39. Finally, when CC-5 contacted Storey in November 2020 to order cocaine and Storey informed him that his "man" had cocaine for sale, law enforcement observed a vehicle Storey had used during the controlled purchases in October and November 2020 parked in front of Abner's residence. *Id.* ¶ 44. These repeated contacts between Storey and Abner and the pattern of Storey's visits to Abner's residence, combined with the contemporaneous information CC-5 provided regarding Storey's drug trafficking activities and the insights afforded from Officer Bailey's training and expertise, are sufficient to support the magistrate judge's determination that probable cause existed.

### B. *Leon*'s Good Faith Exception

"The fact that a Fourth Amendment violation occurred—*i.e.*, that a search or arrest was unreasonable—does not necessarily mean that the exclusionary rule applies." *Herring v. United States*, 555 U.S. 135, 140 (2009). Indeed, "a court should not suppress the fruits of a search conducted under the authority of a warrant, even a 'subsequently invalidated warrant,' unless 'a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" *United States v. Bynum*, 293 F.3d 192, 195 (4th Cir. 2002) (quoting *Leon*, 468 U.S. at 922 n.23). If the officer's reliance on the search warrant was "objectively reasonable," evidence seized pursuant to that warrant should not be suppressed. *Leon*, 468 U.S. at 922. "The *Leon* Court admonished that searches conducted 'pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally

suffices to establish that a law enforcement officer has acted in good faith in conducting the search." *Williams*, 548 F.3d at 317 (quoting *Leon*, 468 U.S. at 922).

Abner argues that the affidavit supporting the search warrant was "so conclusory, stale and bare bones" that it "cannot be salvaged under *United States v. Leon*," as it "supplied no indicia of probable cause." Dkt. 170 ¶ 16. The Government cites the same facts that support its argument for probable cause, contending that those facts provide enough indicia of probable cause that law enforcement could reasonably rely on the warrant. Dkt. 182 at 13.

In this case, the Court need not determine whether the search warrant of 6000 Elm Cove Lane was supported by probable cause. Even if it were not, the Court would still conclude that *Leon*'s good faith exception applies, and that the evidence resulting from the search of 6000 Elm Cove Lane should not be suppressed. *See United States v. Legg*, 18 F.3d 240, 243 (4th Cir. 1994) (recognizing that a "reviewing court may proceed to the good faith exception without first deciding whether the warrant was supported by probable cause").

Abner has not shown that the supporting affidavit to the search warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Williams*, 548 F.3d at 317–18 (quoting *Leon*, 468 U.S. at 923).[3] Rather, the Court finds that the DEA agents' reliance on the search warrant was objectively reasonable. Abner was known by the affiant to be a close associate of Storey, both from the statements of two co-conspirators and from law enforcement's observation of Storey and Abner. Dkt. 174 ¶¶ 19, 41, 46, 47. CC-5

---

[3] There is no argument, much less any basis to conclude, that any of the other circumstances when an officer's reliance on an affidavit would be "objectively unreasonable" are present here: such as that the issuing magistrate or judge was misled by false or misleading information, that the magistrate had "wholly abandoned" the neutral, judicial role, or that the warrant was facially deficient with respect to the place or things to be searched. *Williams*, 548 F.3d at 317–18.

identified Abner as a marijuana courier who had delivered multiple pounds of marijuana to CC-5. *Id.* ¶ 19. CC-5's statements on other topics, including Storey's travel to Arizona, which Abner joined, were corroborated by law enforcement. *Id.* ¶ 41. Storey's drug conspiracy was years-long and ongoing. *Id.* ¶¶ 10, 16, 19. Abner shared seven flights to or from narcotics hubs with Storey since 2018. *Id.* ¶ 41. Storey was frequently in the vicinity of Abner's address, including on occasions when law enforcement knew him to be en route to, or arranging, drug transactions. *Id.* ¶¶ 33, 41. In sum, the affidavit provided enough indicia of probable cause to prevent official belief in the existence of probable cause from being objectively unreasonable.

Because the agents reasonably relied on the search warrant, suppression of evidence from the search of 6000 Elm Cove Lane is inappropriate. *See Williams*, 548 F.3d at 317-18. The Court will therefore deny Abner's motion to suppress the evidence discovered pursuant to the search warrant.

### III. CONCLUSION

For these reasons, Abner's motion to suppress all evidence obtained pursuant to the search warrant for 6000 Elm Cove Lane, Dkt. 170, will be **DENIED**.

It is so **ORDERED**.

The Clerk of Court is directed to send this Memorandum Opinion and Order to all counsel of record.

Entered this 16th day of September, 2021.

*[signature]*
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE